FILED

2014 Aug-22  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| REGINA TRUSSELL, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No.  6:13-cv-01404-HGD |
| | ) |
| CAROLYN COLVIN, | ) |
| COMMISSIONER, SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

## **MEMORANDUM OPINION**

In this action under 42 U.S.C. § 405(g), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (DIB).  (Doc. 1).  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (Doc. 6).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

## I.      Proceedings Below

Plaintiff, Regina Trussell, filed an application for a period of disability insurance benefits on December 1, 2010, alleging that she became disabled on December 5, 2008.  (Tr. 67, 134-35).   Her claim was initially denied and she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 68-73, 75). Following that hearing (Tr. 35-58), the ALJ issued a decision on July 16, 2012, finding that plaintiff was not disabled from December 5, 2008, through June 30, 2011, the date for which she was last insured for DIB.  (Tr. 19-31).  The Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Tr. 1-6, 17). The Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that

significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience.   20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ strictly followed this protocol in evaluating plaintiff's allegations of disability.  The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on June 30, 2011.  She did not engage in substantial gainful activity during the period from her alleged onset date of December 5, 2008, through her date of last insured, June 30, 2011.  Through the date last insured, the ALJ found that plaintiff had the following severe impairments: obesity, arthritis, cervical and lumbar degenerative disc disease, status post left rotator cuff surgery with impingement, carpal tunnel syndrome, mitral valve prolapse, diabetes mellitus, depression, anxiety, and borderline intellectual functioning.  (Tr. 20).

In support of this finding, the ALJ noted that, on January 31, 2011, State agency physician M. Tosi Gilford, M.D., specifically endorsed obesity, cervical and lumbar degenerative disc disease, status post left rotator cuff surgery with impingement, and carpal tunnel syndrome as confirmed severe impairments. (Tr. 25, citing Ex. 10F).  The ALJ noted that treatment records from Maude Whatley Health Services submitted after January 31, 2011, confirm plaintiff's mitral valve prolapse, arthritis and developing diabetes mellitus as additional severe physical impairments,

as well as plaintiff's treatment for depression and anxiety. (*Id*., citing Exs. 8F and 9F). Finally, the ALJ noted that Dr. Alan D. Blotcky, Ph.D., a psychologist, examined plaintiff at the request of plaintiff's representative and determined that her intellectual functioning was at the borderline intellectual level. (*Id.*, citing Ex. 7F).

Plaintiff also was examined by Dr. Samia S. Moizuddin, M.D., on January 25, 2011. According to Dr. Moizuddin, plaintiff is five feet four inches tall and weighed 225 pounds. He assigned a body mass index (BMI) score of 39. The ALJ found that this impairment has more than minimal impact on plaintiff's ability to engage in work related activities and is, therefore, severe. (*Id.*).

According to the ALJ, plaintiff has a medically documented history of the following impairments: bipolar disorder, bronchitis, allergies, asthma, hypertension, and tobacco abuse. Dr. Gilford found that, though poorly controlled, there was no end-organ damage or complications related to the plaintiff's hypertension. Therefore, it was not severe. (Tr. 25, citing Ex. 10F). The ALJ stated that plaintiff has not alleged any substantial limitations due to these conditions. Therefore, he concluded that they were non-severe. (*Id.*, citing 20 C.F.R. §§ 404.1512 and 416.921).

The ALJ also noted that plaintiff also alleged, or the medical record indicates a history of or complaints for rheumatoid arthritis. However, plaintiff has not alleged any substantial limitations due to this condition and there is no documented diagnosis

of an underlying impairment for this complaint.   Consultative examiner Dr. Moizuddin's review of plaintiff's bodily systems returned no finding of rheumatoid arthritis.  (*Id.*, citing Ex. 1F).  Dr. Gilford also noted that there was no confirmed medically determinable impairment of rheumatoid arthritis in his review of plaintiff's medical records.  (*Id.*, citing Ex. 10F).

The ALJ also determined that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (Tr. 26).  Plaintiff has not contested this finding.

In considering plaintiff's mental impairments under Step Three, the ALJ found that they did not meet or medically equal the criteria of §§ 12.04, 12.05 or 12.06.  He specifically considered whether the "paragraph B" criteria were satisfied.  To satisfy "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties maintaining concentration, persistence or pace; and repeated episodes of decompensation, each of extended duration.  A "marked limitation" means more than moderate, but less than severe. (Tr. 26-27).

The ALJ found that, in activities of daily living, social functioning, and concentration, persistence or pace, plaintiff had a moderate restriction. (Tr. 27). The ALJ considered the assessment of plaintiff by Dr. Alan D. Blotcky, Ph.D., a psychologist who examined plaintiff. He reported that plaintiff had borderline intellectual abilities and suffered from a severe depressive disorder. However, the ALJ found that Dr. Blotcky's assessment is dramatically inconsistent with plaintiff's own reported activities (Ex. 3E) and level of functioning. Further, plaintiff's medical records do not indicate that plaintiff has ever sought treatment other than medication from a treating physician for her alleged mental limitations. Therefore, the ALJ concluded that Dr. Blotcky's assessment (Ex. 7F) was not supported by the medical record as a whole and was given limited weight. (*Id.*).

The ALJ further noted that plaintiff reported no problems with personal care on her Function Report-Adult that she completed on December 23, 2010, except difficulties with small buttons and zippers; cooking simple meals; household chores and laundry, but no yard work; driving and walking; weekly shopping for up to two hours; lifting up to 20 pounds without pain; and walking up to a quarter mile before needing to stop and rest for 10 to 15 minutes. (Tr. 27, citing Ex. 3E). There is no evidence that plaintiff experienced any episodes of decompensation which have been of extended duration. (*Id.*). Because plaintiff's mental impairments did not cause at

least two "marked" limitations or one "marked' limitation and "repeated" episodes of decomposition, each of extended duration, the ALJ held that the "paragraph B" criteria were not satisfied.

However, while the limitations identified in "paragraph B" are not a residual functional capacity (RFC) assessment, but are used to rate the severity of mental impairments at Steps Two and Three, the mental RFC capacity assessments used in Steps Four and Five require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders in section 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the ALJ included the degree of limitations he found in the "paragraph B" mental function analysis in his analysis of plaintiff's RFC. (Tr. 27).

Under Step Four, the ALJ found that, through the date last insured, plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except she can lift up to 20 pounds occasionally and ten pounds frequently; can stand and walk combined, or sit, with normal breaks, for a total of six hours in an eight-hour workday; is unable to climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl; should avoid concentrated exposure to extreme cold, wetness, humidity and vibration; and should avoid all exposure to hazardous machinery and heights. (Tr. 28).

In making this determination, the ALJ followed the two-step process in which it first must be determined whether there is an underlying medically determinable physical or mental impairment(s) and, second, the ALJ must evaluate the intensity, persistence and limiting effects of plaintiff's symptoms to determine the extent to which they limit her functioning.  (Tr. 28-29).

According to the ALJ, plaintiff argued that she was unable to work primarily because of her affective disorder as it is defined under section 12.04.  She testified that she suffered from anxiety and was recently diagnosed with bipolar disorder.  In addition, she testified that she also has chest pain, vertigo and arthritis in her hands that results in numbness and aching.

Regarding her mental impairments, plaintiff testified that her treatment consists of medication from her treating physician at Maude Whatley Health Care Clinic. Plaintiff stated that she could not deal with people or work with anyone.  Regarding her physical impairments, plaintiff testified  that she has problems with her hands, left knee and left shoulder.   It also was noted that she had mitral valve prolapse, developing diabetes mellitus, and depression and anxiety.  (Tr. 29, citing Exs. 8F and 9F).  Plaintiff stated also that she has a problem picking up a gallon of milk and, because of the pain, often lies on a heating pad for three or four hours during the day. She takes only over-the-counter medications for relief of from her pain because she

does not wish to take narcotics.  On a scale of 1 to 10, plaintiff stated that her average level of pain was a 7.  In addition to the pain, plaintiff has a limited range of motion in her left arm.  Finally, plaintiff testified that she is pre-diabetic and has been prescribed medications to control her blood sugar.  (Tr. 29).

The ALJ noted that medical records from the University of Alabama Hospital Birmingham (UAB) indicate that plaintiff underwent rotator cuff repair in November 2002 and April 2003.  (Tr. 29, citing Ex. 2F).  X-rays from the Kirkland Clinic at UAB in January 2006 reflect  a stable degree of mild acromioclavicular degenerative joint disease in her left shoulder.  (*Id.*, citing Ex. 5F).  She was diagnosed with arthritis and carpal tunnel syndrome in the right hand at the Winston County Medical Center in August 2006.  She was treated for vertigo and shortness of breath at Sumiton Medical Clinic in December 2008.  In February 2009, it was noted that plaintiff's diabetes mellitus and her chronic musculoskeletal pain were controlled.  On May 19, 2009, she was diagnosed with cervical and lumber degenerative joint disease and right knee pain on December 29, 2009.  She reportedly also suffered a muscle strain in her left chest while reaching overhead.  (*Id.*, citing Ex. 4F).

According to the ALJ, plaintiff was seen by a consulting physician, Dr. Samia S. Moizuddin, M.D., on January 25, 2011.  Dr. Moizuddin diagnosed plaintiff with low back pain, degenerative disc disease, left knee pain, left shoulder rotator cuff

injuries with impingement status post surgery, and hypertension. He observed some limitations in her range of motion in her dorsolumbar spine, left knee and left shoulder, and observed dexterity and grip strength were normal. (Tr. 29-30, citing Ex. 1F). The ALJ gave significant weight to the findings and opinions of Dr. Moizudden. (Tr. 30).

The ALJ also noted that the State agency physician, Dr. M. Tosi Gilford, M.D., endorsed the consulting physician and, in his own review of the medical records, found that the plaintiff can lift up to 20 pounds occasionally and 10 pounds frequently. He also found that she can stand and walk combined, or sit, with normal breaks for a total of six hours each in an eight-hour workday. According to Dr. Gilford, plaintiff was unable to climb ladders, ropes and scaffolds; could occasionally climb ramps or stairs, balance, kneel, crouch or crawl; should avoid concentrated exposure to extreme cold, wetness, humidity and vibration; and should avoid all exposure to hazardous machinery and heights. (Tr. 30, citing Ex. 10F).

The ALJ determined that plaintiff's medically determinable impairments could reasonable be expected to cause the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effect of these symptoms were not credible to the extent they were inconsistent with the objective medical evidence. (Tr. 30).

The ALJ stated that, although plaintiff alleged in her testimony daily activities that are limited, two factors weighed against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, her limited daily activities cannot be verified with any reasonable degree of certainty because they are inconsistent with her earlier report on activities of daily living.  Second, even if her daily activities are as limited as she has alleged, it is difficult to attribute that degree of limitation to plaintiff's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in the ALJ's decision.  He noted that the medical records reflect infrequent trips to the doctor, especially considering the degree of pain alleged by plaintiff in her testimony. Overall, the ALJ believed that plaintiff's treatment was more supportive of the findings of the State agency physician and did not support the degree of limitation alleged by plaintiff.  (*Id.*, citing Ex. 10F).

According to the ALJ, the vocational expert testified that a claimant with the above-stated RFC could perform at the light level of exertion the jobs of fast food worker, cashier, hand presser at a cleaner and clerical worker.  Based on this testimony, the ALJ determined that plaintiff could return to her past relevant work. (Tr. 30).  There, he concluded that she was not under a disability, as defined by the

Social Security Act, at any time from December 5, 2008, the alleged onset date, through June 30, 2011, the date last insured.  (Tr. 31).

## III.  Plaintiff's Argument for Reversal

Plaintiff complains that the ALJ failed to send plaintiff for an MRI regarding her complaints that her hands go numb and her fingers swell as a result of arthritis. Plaintiff asserts that the pain in her hands is so great that she cannot sustain competitive employment. (Doc. 9, Plaintiff's Brief, at 14-15).  She also states that the ALJ erred in failing to consider the combined effects of her pain, fatigue and depression or her newly diagnosed bipolar condition.  (*Id.* at 15-16).  She asserts that the case should be remanded for the Commissioner to consider whether her bipolar disorder could be related to her mental impairment during her insured period.  (*Id.* at 17).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."

*Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.     Discussion

Plaintiff asserts that the ALJ failed to develop the record by not ordering an MRI of her hands.  She notes that in September 2011, she complained of bilateral numbness to Whatley Health Services and her health provider recommended that she undergo an MRI.  (Tr. 287).  However, she did not undergo this procedure due to lack of money.  (Tr. 40).

Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The ALJ has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted).

Despite plaintiff's complaint, the medical record reflects no problems with her hands. When she was examined by Dr. Moizuddin in January 2011, she reported no problems with her hands. (Tr. 198). On examination by Dr. Moizuddin, he found that plaintiff had a normal range of motion in her elbows, forearms, wrists and fingers. (Tr. 197). Her dexterity and strength were normal. (*Id.*).

Even the health provider to whom plaintiff complained of the hand numbness noted that she had a good range of motion in both hands and wrists. (Tr. 287). She also had a negative Tinel's sign, *i.e.*, no pain upon the tapping of the median nerve at the wrist. (Tr. 287). In addition, plaintiff's claim of hand numbness came several months after her date of last insured. (Tr. 132, 287). A claimant for benefits must show that she has a disability on or before the date last insured. 42 U.S.C. § 423(a)(1)(A); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render a decision. *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citing *Ford v. Sec'y of Health and Human Svcs.*, 659 F.2d 66, 69 (5th Cir. 1981)). In this case, the absence of an MRI made it impossible for the ALJ to determine with absolute certainty that plaintiff does not suffer from a disabling hand condition. However, the statute does not require absolute certainty; it requires only substantial evidence to sustain the Secretary's findings. The absence of an MRI did not render the ALJ incapable of making an overall disability determination. There was sufficient, *i.e.* substantial other, evidence for him to make determination regarding plaintiff's physical limitations, especially given the fact that this condition arose after plaintiff's date last insured. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Plaintiff also contends that the ALJ did not consider the combined effects of her impairments. However, this is not borne out by a review of the ALJ's decision. In fact, he determined, after consideration of all the evidence, that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments included in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26, 28). The ALJ's determination constitutes evidence that he

considered the combined effects of plaintiff's impairments. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2004).

The ALJ clearly considered and discussed plaintiff's impairments, both in determining the severity of plaintiff's impairments and her RFC. The ALJ specifically found that plaintiff's obesity, arthritis, anxiety, depression, diabetes mellitus, mitral valve prolapse, carpal tunnel syndrome, borderline intellectual functioning, cervical and lumbar degenerative disc disease, and history of left rotator cuff surgery with impingement were severe impairments. (Tr. 24-25). In doing so, he outlined plaintiff's medical history and determined that her impairments, singly or in combination, did not preclude her from performing a range of work with certain postural and environmental limitations. (Tr. 28-30).

Plaintiff also contends that the ALJ did not properly assess her allegations of disabling pain. However, a review of the record refutes this. The Eleventh Circuit has established a "pain standard" to assist in determining the extent a claimant's pain impairs his or her ability to work. It requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). This

standard applies to symptoms other than pain, as well. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

Here, the ALJ properly considered plaintiff's subjective complaints and adequately explained his reasoning for finding her not entirely credible. (Tr. 28-30). He concluded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he found her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they were inconsistent with the objective medical evidence, daily activities and response to treatment. (Tr. 30). The ALJ fully explained the basis for his decision.

First, he considered the objective medical evidence and noted that from 2008 to 2010, medication controlled plaintiff's musculoskelatal pain. (Tr. 29, 244, 246, 248, 250, 252, 254). He also noted that the January 2011 consultative examination reflected that plaintiff had full muscle strength except for her left shoulder. She had normal muscle tone and could squat within normal limits though she needed assistance in returning to an upright position due to back pain and stiffness. (Tr. 29-30, 200). That examiner noted that plaintiff had a normal gait and did not need an assistive device (such as a cane). (Tr. 200). Plaintiff did not complain to the Whatley Health Services of the extreme limitations to which she testified. (Tr. 287-91, 298-

99).  When she presented to Whatley Health Services in March 2011 to re-establish care, she did not complain about any pain or swelling.  (Tr. 290-91).  The ALJ also noted the medical record reflects infrequent trips to the doctor, especially considering the degree of pain alleged by plaintiff in her testimony.  (Tr. 30).

The ALJ also made note of plaintiff's daily activities when evaluating her subjective complaints.  He noted that her testimony of her extreme limitations was inconsistent with earlier reports of her daily activities.  (Tr. 30, 157-64).  In addition, consultative psychological examiner Alan Blotcky, Ph.D., who examined plaintiff in May 2011, noted that she reported spending most of her time doing light housework, cooking and watching television.  (Tr. 281).  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.  *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  The ALJ articulated reasons supported by substantial evidence for his adverse credibility determination.  Therefore, the claim that the ALJ improperly evaluated her credibility concerning her pain lacks merit.

Plaintiff asserts that the case should be remanded for the Commissioner to consider whether her bipolar disorder could be related to her mental impairment during her insured period.  More than eight months after her date last insured, plaintiff presented evidence to the ALJ showing that on March 12, 2012, a nurse

practitioner with Whatley Health Services diagnosed her with a bipolar disorder. (Tr. 311-12). The ALJ found this condition to be not severe. Although the ALJ accepted the diagnosis from the nurse practitioner, as defendant correctly points out, the regulations state that a medically determinable impairment may only be established by an acceptable medical source, such as a physician. *See* 20 C.F.R. § 404.1513(a)(1). A nurse practitioner is not an acceptable medical source. *See id.* at § 1513(a), (d)(1).

Plaintiff alleges that the ALJ erred by not discussing this evidence in more detail and by not considering whether her bipolar disorder could be related to her mental impairment during her insured period. However, there are no medical records submitted which support a conclusion that plaintiff suffered from a bipolar disorder prior to the expiration of her disability insured status. Even the March 2012 note from Whatley Health Services does not explain the symptoms that led the nurse practitioner to make a diagnosis of bipolar disorder. (Tr. 311). Thus, there is nothing to cause the ALJ to believe that plaintiff's bipolar disorder existed before the date last insured. A showing that a claimant became impaired after the expiration of his insured status is insufficient to establish eligibility for DIB. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

## VI.     Conclusion

The ALJ's decision reflects that he properly considered the record during the relevant time period, and substantial evidence supports his findings and conclusion that plaintiff was not disabled under the Social Security Act at any time from her alleged onset date of December 5, 2008, through June 30, 2011, her date last insured. Therefore, that decision is due to be affirmed.  A separate order will be entered.

DONE this 22nd day of August, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE